# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Montez O. Walker,
    Petitioner

vs                             Case No. 1:05cv103
                                   (Spiegel, S.J.; Black, M.J.)

Deb Timmerman-Cooper,
    Respondent

## REPORT AND RECOMMENDATION

Petitioner, a prisoner in state custody at the London Correctional Institution in London, Ohio, has filed this action *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the petition (Doc. 1); respondent's "Answer/Return Of Writ" with exhibits, including the transcript of the state criminal trial proceeding (Doc. 5); and petitioner's "traverse" brief in response to the return of writ (Doc. 6).

### Factual And Procedural Background

On March 4, 2002, the Hamilton County, Ohio, grand jury returned a two-count indictment charging petitioner with one count of trafficking in cocaine in violation of Ohio Rev. Code § 2925.03(A)(2), and one count of possession of cocaine in violation of Ohio Rev. Code § 2925.11(A).  (Doc. 5, Ex. 2).  On January 29, 2003, after a jury trial, petitioner was found guilty of the trafficking offense and acquitted on the possession charge.  (*See id.,* Ex. 6; Ex. 17, Tr. 275-76).

Petitioner's counsel filed a post-verdict motion for judgment of acquittal pursuant to Ohio R. Crim. P. 29(C) and motion for new trial, which were denied on February 21, 2003 before the trial court proceeded with sentencing.  (*Id.,* Exs. 4-5; Ex. 17, Tr. 291).   Thereafter, on February 21, 2003, petitioner was sentenced to a nine (9)

year term of imprisonment for the drug trafficking offense.  (*Id.,* Ex. 6).

With the assistance of counsel, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District, raising the following assignments of error:

> 1.  The judgment and verdict regarding appellant's conviction of trafficking in cocaine is contrary to law and against the manifest weight of the evidence.
>
> 2.  The trial court erred to the prejudice of appellant by denying his Crim. R. 29 motions for acquittal based upon insufficiency of evidence.

(*Id.,* Ex. 9).[1]

On January 21, 2004, the Ohio Court of Appeals overruled the assignments of error and affirmed the trial court's judgment.  (*Id.,* Ex. 1).  In its Judgment Entry, the court made findings of fact, which are presumed correct under 28 U.S.C. § 2254(e)(1),[2] from the evidence presented at trial regarding the incident that took place in the early morning hours of February 17, 2002 in the Over the Rhine area of Cincinnati:

> In this case, the evidence presented at trial demonstrated that police officers responded to a report of shots, and saw [petitioner], who matched the description of the suspect from the broadcast.  Officers saw [petitioner] step out of a breezeway, look up the street at some uniformed

---

[1]Petitioner also separately filed a *pro se* appeal, which was consolidated with the appeal filed by counsel on petitioner's behalf.  (*See* Doc. 5, Exs. 1, 8).  In his *pro se* appeal, petitioner apparently additionally argued that the trial court erred by entering a judgment of conviction after a witness failed to appear, and that defense counsel was ineffective in failing to ask the trial court to grant immunity to a defense witness.  (*See id.,* Ex. 1, pp. 1-2).

[2]28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has neither cited nor presented any evidence to rebut the Ohio court's factual findings quoted herein. Therefore, petitioner has not demonstrated by clear and convincing evidence that such findings are erroneous.

officers, and then run to a nearby van and enter the right front seat. The van immediately accelerated away.

Within moments, officers stopped the van and removed from it the driver and two passengers. [Petitioner] was the front-seat passenger, and another man was sitting in the right rear passenger seat. The seats in the van were described as captain's chairs.

The driver gave the officers permission to search the van. The officers recovered from the front passenger seat where [petitioner] had been sitting two large bags of crack cocaine. The crack cocaine was in the crevice of the seat, near the place where the seat belt was connected to the seat. The crack cocaine weighed 35.30 grams and had a street value of approximately $3,500. The officers recovered from [petitioner] a bag of marijuana, a digital scale, a cell phone, three empty cellophane baggies, and $243 in currency. [Petitioner] claimed that he had used the scale for weighing marijuana.

The officers testified that drug dealers commonly used cellophane baggies to carry drugs, and that dealers typically put a piece of crack cocaine in the bottom corner of a baggie and then tied it off. The officers also testified that drug dealers often used digital scales to weigh their drugs. . . .

(*Id.,* pp. 2-3).

It appears from the record that after the Ohio Court of Appeals affirmed petitioner's conviction on direct appeal, a person named Regina Gaithers contacted the Ohio Public Defender's Office on petitioner's behalf, requesting review of petitioner's case "for possible representation in the Ohio Supreme Court." (*See* Doc. 6, Appendix, Ex. A).

By letter dated February 9, 2004, which was sent to petitioner at Noble Correctional Institution, the Chief Appellate Counsel for the Ohio Public Defender informed petitioner: "I have reviewed your direct appeal and have concluded that this office will not be representing you in the supreme court." (*Id.*). The letter provided in relevant part:

. . . .We may accept only those cases that have issues of arguable merit. Only those issues that were raised or arose in the court of appeals can be raised in the supreme court. A direct appeal must be based on facts that appear on the record. The facts of your case and the relevant law are such that the supreme court is unlikely to grant you leave to appeal. The supreme court accepts very few cases. I do not think they would find yours to be one of constitutional importance or great societal interest. Therefore, I cannot represent you.

If you wish to take your case to the Ohio Supreme Court, you will have to represent yourself, or obtain other counsel. *If you are going to represent yourself, you will be responsible for complying with the court's rules of practice. A copy of those rules is enclosed. According to the rules, you must file a notice of appeal, a memorandum in support of jurisdiction, an affidavit of indigency, and the appropriate number of copies in the Ohio Supreme Court on or before March 8, 2004.* If you cannot meet the deadline, you must file a motion for delayed appeal. See Rule II, Section 2(A)(4)(a).

(*Id.*) (emphasis added).

Petitioner failed to file a timely appeal to the Supreme Court of Ohio in accordance with the instructions given in the February 9, 2004 letter from the Ohio Public Defender's Office. Apparently, the Supreme Court of Ohio received untimely *pro se* appeal documents from petitioner on June 16, 2004, which were returned to petitioner by letter dated the same date due to petitioner's noncompliance with certain requirements of the Rules of Practice of the Supreme Court of Ohio. (*See id.,* Ex. B). Specifically, petitioner was informed by a deputy clerk that the notice of appeal did not contain his signature "as required by VIII, Section 3," and that the "memorandum in support of jurisdiction is not required unless and until the court grants the motion for delayed appeal." (*Id.*)

Petitioner resubmitted corrected documents, which were filed with the state supreme court on July 14, 2004. (Doc. 5, Exs. 11-12). In his motion for leave to file a delayed appeal, petitioner averred that he was unable to file a timely appeal because he had "limited access to the [prison] law library;" was uneducated and unfamiliar with the rules of the Supreme Court of Ohio; and could not obtain legal counsel or a person trained in the field to assist him in perfecting a timely appeal. (*Id.,* Ex. 12).

4

Petitioner also asserted that he had "little or no knowledge of the law to argue the merits of his case" on his own. (*Id.*).

On September 1, 2004, the Supreme Court of Ohio issued an Entry denying petitioner's motion for delayed appeal and dismissed the case without opinion. (*Id.,* Ex. 14).

Petitioner next initiated the instant federal habeas corpus action. The petition, which was signed by petitioner on February 7, 2005, was stamped as "filed" on February 17, 2005. (Doc. 1). In the petition, petitioner asserts as grounds for relief the same two claims that his counsel raised on direct appeal–i.e., that his drug trafficking conviction is based on insufficient evidence and is against the manifest weight of the evidence. (*Id.*, pp. 5-7).

Respondent has not argued, nor does it appear, that this case triggers any statute of limitations concerns. It further appears that petitioner has exhausted all available state court remedies with respect to his claims for relief.

Respondent contends in the return of writ that petitioner has waived his claims for relief, due to his procedural default in failing to file a timely appeal to the Supreme Court of Ohio. (*See* Doc. 5, Brief, pp. 6-12). Respondent alternatively argues that petitioner's manifest weight of the evidence claim is not cognizable in this federal habeas proceeding, and that the sufficiency of evidence claim should be denied as lacking in merit. (*Id.,* pp. 17-20).

## OPINION

### A. Petitioner Has Waived His Claims For Relief Due To His Procedural Default In Failing To File A Timely Appeal To The Supreme Court of Ohio

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c)*; see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the

state's highest court in order to satisfy the fair presentation requirement. *See Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985); *see also O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999).

If petitioner fails to fairly present his claims through the requisite of levels of state appellate review to the state's highest court, or commits some other procedural default to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

If, because of a procedural default, petitioner has not had his claims considered by the state's highest court on the merits and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, as respondent has argued, petitioner committed a procedural default by failing to timely appeal the Ohio Court of Appeals' direct appeal decision to the Supreme Court of Ohio. Although petitioner attempted to obtain a delayed appeal approximately six months after the Court of Appeals issued its decision on direct appeal, the Sixth Circuit has held in an analogous case that the state supreme court's unexplained entry denying a motion for delayed appeal "constitutes a[n adequate and independent state] procedural ruling sufficient to bar federal court review of [the] habeas corpus petition." *Bonilla v. Hurley,* 370 F.3d 494, 497(6th Cir.) (*per curiam*), *cert. denied,* 543 U.S. 989 (2004); *see generally Harris,* 489 U.S. at 260-62. In so holding, the Sixth Circuit reasoned that "the applicable Ohio [Supreme Court] rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits." *Bonilla,* 370 F.3d at 497 (and unpublished Sixth Circuit cases cited therein).

As the Sixth Circuit stated in *Bonilla,* "[w]hen a 'state prisoner has defaulted his

federal claims in state court pursuant to [such] an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Id.* (quoting *Coleman,* 501 U.S. at 750).

Petitioner has not demonstrated a fundamental miscarriage of justice will occur if his procedurally-defaulted claims for relief are not considered, or in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370 F.3d at 498. Although petitioner has alleged the evidence is insufficient to support his conviction, establishing actual innocence requires a showing of factual innocence, not mere legal insufficiency. *See Bousley v. United States,* 523 U.S. 614, 623 (1998); *Hampton v. United States,* 191 F.3d 695, 703 (6th Cir. 1999).

Petitioner also has failed to establish "cause" for his procedural default in the state courts.

In both his "traverse" brief and his motion for delayed appeal to the Supreme Court of Ohio, petitioner has argued as "cause" for his procedural default that he was unable to obtain legal assistance in perfecting a timely appeal, had "limited access" to the prison law library, had "little or no knowledge of the law to argue the merits of the case" on his own, and was unfamiliar with the rules of the Supreme Court of Ohio. (Doc. 5, Ex. 12; Doc. 6). However, none of these arguments establish cause to excuse petitioner's procedural default.

In *Bonilla,* 370 F.3d at 498, the Sixth Circuit specifically rejected similar arguments for "cause" as follows:

First, [petitioner's] pro se status before the Ohio Supreme Court is insufficient to establish cause to excuse his procedural default. *See Hannah v. Conley,* 49 F.3d 1193, 1197 (6th Cir. 1995). Second, [petitioner's] ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse his procedural default. *See id.* . . .

. . . .Fourth, the fact that [petitioner's] time in the prison law library was

7

limited . . . was insufficient to establish cause to excuse his procedural default. Additionally, [petitioner] does not indicate why he required additional time to conduct legal research and how the limited law library time prevented him from filing a timely notice of appeal. . . .

In this case, petitioner also generally averred that he was denied access to the courts because the prison law library at Noble Correctional Institution, where he was incarcerated, was inadequate in that it contained "old or outdated" books with pages torn from them. (*See* Doc. 6, Ex. E). Even assuming, *arguendo,* as petitioner contends, that the materials contained in the prison law library were insufficient to adequately assist petitioner in perfecting a timely appeal, it appears from the record that a month before the appeal period was due to expire, the Ohio Public Defender's Chief Appellate Counsel provided petitioner with a copy of the state supreme court's Rules of Practice setting forth the requirements for perfecting appeals, and also expressly informed petitioner of the March 8, 2004 filing deadline and specifically what petitioner needed to do to comply with the state supreme court's rules of practice in perfecting an appeal. (*See id.*, Ex. A).

The Ohio Public Defender's Chief Appellate Counsel also informed petitioner that he could only raise issues that already had been argued or arose on direct appeal. (*Id.*). Indeed, the two claims raised by petitioner in the instant habeas corpus action are the same claims of error asserted and argued by his appellate counsel on direct appeal to the Ohio Court of Appeals. (*See* Doc. 1, pp. 5-7; Doc. 5, Ex. 9). As in *Bonilla,* petitioner has not indicated why he required additional time to conduct further legal research pertaining to these issues, or how the claimed limitations on his access to the prison law library's legal materials actually prevented him from filing a timely appeal.

Accordingly, the Court concludes that petitioner is not entitled to habeas corpus relief because he has waived his claims for relief due to his procedural default in failing to file a timely appeal to the Supreme Court of Ohio from the Ohio Court of Appeals' direct appeal decision.

**B. Alternatively, Petitioner Is Not Entitled To Relief Based On The Merits Of His Claims Challenging the Weight And Sufficiency Of Evidence**

In Ground One of the petition, petitioner alleges that the jury's verdict of guilt on the trafficking in cocaine charge is "contrary to law and against the manifest weight of the evidence." (Doc. 1, p. 5). In Ground Two, he asserts that the evidence presented against him at trial is insufficient to support his drug trafficking conviction. (Doc. 1, pp. 6-7).

As an initial matter, the Court concludes that petitioner's "manifest weight of evidence" claim alleged in Ground One is not cognizable in this federal habeas proceeding. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"); *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir.), *cert. denied,* 540 U.S. 930 (2003).

Petitioner's "manifest weight of the evidence" claim raises an issue of state-law only. *See Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins,* 678 N.E.2d 541, 546-48 (Ohio 1997), *superseded by state constitutional amendment on other grounds, State v. Smith,* 684 N.E.2d 668 (Ohio 1997), *cert. denied,* 523 U.S. 1125 (1998). Therefore, only petitioner's sufficiency of evidence claim alleged in Ground Two of the petition triggers due process concerns that are subject to review on the merits.

In Ground Two, petitioner essentially contends that the jury had to find beyond a reasonable doubt that he possessed cocaine in order to find him guilty of trafficking in cocaine. (*See* Doc. 1, pp. 6-7). It is petitioner's position that because the jury acquitted him on the possession charge, thereby rejecting the State's theory that petitioner possessed and discarded the cocaine found in the van, the evidence was insufficient to support petitioner's trafficking conviction. (*Id.*).

The claim was first presented by petitioner to the trial court by way of his post-verdict motion for judgment of acquittal. (*See* Doc. 5, Ex. 4). The court overruled the motion, reasoning in relevant part on the record prior to sentencing as follows:

The record would reflect that . . . the motion . . . is well drafted, although it does leave out certain essential elements, and that is:

> That the jury was presented with the fact that your client did have a digital scale on or about his person; that he did have baggies, which the evidence would suggest based on the officers' testimony that they are used in the preparation and distribution of drugs; that he did have a fair amount of cash on his hands, on his person; and he did have a cellular phone.

The proposition contained in your motion basically is that if one is not – if the jury finds one not guilty of possession, i.e., and therefore, he must also be found not guilty of trafficking.

(Doc. 5, Ex. 17, Tr. 284-85).

The trial court went on to consider numerous state appellate court cases, including three cases from the First Appellate District, to the effect that drug possession under Ohio Rev. Code § 2925.11 and drug trafficking under Ohio Rev. Code § 2925.03(A)(2) are not allied offenses.  (*See id.,* Tr. 285-90).  The court cited the decision of the Ohio Court of Appeals, First Appellate District, in *State v. Johnson,* 747 N.E.d 863 (Ohio Ct. App. 1ˢᵗ Dist. 2000), as expressly holding that the "drug trafficking statute does not require an actual possession or use of the controlled substance." (*Id.,* Tr. 287).  Based on its review of the pertinent state case-law, the trial court concluded that there was "more than ample law in the State of Ohio that one can be convicted of drug trafficking and not be in possession of the drugs in question" and denied petitioner's motion for judgment of acquittal.  (*Id.,* Tr. 291).

On direct appeal, the Ohio Court of Appeals rejected petitioner's assignment of error challenging the trial court's ruling on his post-verdict motion for judgment of acquittal in relevant part as follows:

> . . . . Our standard of review for the denial of a Crim.R. 29 motion is the same as the standard of review for the sufficiency of the evidence.  To reverse a conviction for insufficient evidence, we must be persuaded, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the

10

crime proved beyond a reasonable doubt.

[Petitioner's] appellate counsel argues that, because the jury acquitted [petitioner] on the possession-of-cocaine charge, the evidence was insufficient to convict him on the trafficking charge. We disagree. Trafficking and possession are not allied offenses of similar import, and the commission of one offense does not necessarily result in the commission of the other. "[T]he drug-trafficking statute does not require actual possession or use of the controlled substance." Because the offenses of trafficking and possession each require proof of an additional fact that the other does not, "it is possible to sell or offer to sell crack cocaine without possessing it." Because we conclude that [petitioner's] conviction was based upon sufficient evidence, we overrule the last assignment of error.

(Doc. 5, Ex. 1, p. 4) (footnotes to state case citations omitted).

The Supreme Court decision governing the resolution of petitioner's sufficiency of evidence claim is *Jackson v. Virginia,* 443 U.S. 307 (1979). The Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship,* 397 U.S. 358, 363-64 (1970). When petitioner raises a sufficiency of evidence claim in a petition for a writ of habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

This standard does not require the State to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, under this standard, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6ᵗʰ Cir.), *cert. denied,* 464 U.S. 951, 962 (1983). It is the jury's responsibility as the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to make its own subjective determination of guilt or innocence or otherwise substitute its opinion for that of the jury which convicted the petitioner.

11

*Id.* at 318-19 & n.13; *see also York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (*per curiam*), *cert. denied,* 490 U.S. 1049 (1989).

Here, petitioner challenges the sufficiency of evidence supporting his trafficking-in-cocaine conviction under Ohio Rev. Code § 2925.03(A)(2). The statute provides: "No person shall knowingly . . . [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person." Ohio Rev. Code § 2925.03(A)(2). This provision does not explicitly state that the offender's possession of the controlled substance is an essential element of the trafficking offense.

Although it appears the Supreme Court of Ohio has not spoken on the issue, some state appellate courts have held, as petitioner has pointed out, that "possession is a 'requisite element' of drug trafficking under R.C. 2925.03(A)(2)." *State v. Arrington,* 582 N.E.2d 649, 651 (Ohio Ct. App. 8th Dist.), *appeal dismissed,* 556 N.E.2d 526 (Ohio 1990) (citing *State v. Mateo,* No. 55833, 1989 WL 95760, at *2 (Ohio Ct. App. 8th Dist. Aug. 17, 1989) (unpublished), *rev'd in part & aff'd in part on other grounds,* 565 N.E.2d 590 (Ohio 1991)).[3] Indeed, in unpublished cases from Ohio's Eighth Appellate District, where evidence of possession was considered a required element of a trafficking offense, the court held that evidence found to be insufficient to establish a possession offense, therefore, was also insufficient to support the defendant's conviction under the trafficking statute. *See, e.g., State v. Garcia,* No. 67867, 1995 WL 693096, at *5-6 (Ohio Ct. App. 8th Dist. Nov. 22, 1995) (unpublished), *appeal dismissed,* 664 N.E.2d 536 (Ohio 1996); *State v. Rodriguez,* No. 67912, 1995 WL 517087, at *3-4 (Ohio Ct. App. 8th Dist. Aug. 31, 1995) (unpublished), *appeal dismissed,* 660 N.E.2d 744 (Ohio 1996).

---

[3] *Cf. State v. Powell,* 621 N.E.2d 1328 (Ohio Ct. App. 8th Dist.) (drug trafficking offense under Ohio Rev. Code § 2925.03(A)(2) requires proof of "more than mere 'possession' of a controlled substance"), *appeal dismissed,* 619 N.E.2d 420 (Ohio 1993); *State v. Jones,* No. 9-02-39, 2003 WL 1617979, at *7 (Ohio Ct. App. 3rd Dist. Mar. 31, 2003) (unpublished) ("[p]ossession of drugs is necessarily incident to transacting drug sales"), *appeal dismissed,* 792 N.E.2d 200 (Ohio 2003); *State v. Carter,* No. C-890787, 1990 WL 209676, at *2 (Ohio Ct. App. 1st Dist. Dec. 19, 1990) (*per curiam*) (unpublished) (drug possession charge and drug trafficking charge, which stemmed from the defendant's having in his possession the same cocaine, constituted "allied offenses of similar import since implicit in the offense of trafficking under R.C. 2925.03(A)(2) is the offense of possession under R.C. 2925.03(A)(4)").

In other cases, however, sometimes the same appellate courts have concluded in holding possession and trafficking charges are not allied offenses of similar import that, in contrast to the possession statute, the "drug-trafficking statute does not require actual possession or use of the controlled substance." *State v. Johnson,* 747 N.E.2d 863, 867 (Ohio Ct. App. 1st Dist. 2000); *State v. Fair,* No. 82278, 2004 WL 1277153, at *6-7 (Ohio Ct. App. 8th Dist. June 10, 2004) (unpublished) (holding that "possession of and trafficking in cocaine are distinguishable" because "[i]t is possible to possess crack cocaine without offering it for sale, and it is possible to sell or offer to sell crack cocaine without having it in one's possession or control").[4]

In this case, the Ohio courts relied on the line of state cases which suggest that possession is not an essential element of drug trafficking that must be proved beyond a reasonable doubt to establish a defendant's guilt on a trafficking charge.  (*See* Doc. 1, Ex. 1, p. 4; Ex. 17, Tr. 285-91).  Although as discussed above, *see supra* pp. 12-13, the law in Ohio is unclear on this point, on federal habeas review of a state conviction, the court must defer to and is bound by the state courts' determination of this state-law issue.  *See e.g., Gimotty v. Elo,* 40 Fed.Appx. 29, 32 (6th Cir. Apr. 25, 2002) (not published in Federal Reporter) (citing *Davis v. Strack,* 270 F.3d 111, 123 n.4 (2nd Cir. 2001)), *cert. denied,* 537 U.S. 894 (2002); *Johnson v. Rosemeyer,* 117 F.3d 104, 108 (3rd Cir. 1997); *see also Estelle,* 502 U.S. at 67-68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Warner v. Zent,* 997 F.2d 116, 133 (6th Cir. 1993) (absent a showing of "extreme circumstances where it appears that the [state court's] interpretation of [state law] is an obvious subterfuge to evade consideration of a federal issue," the federal habeas court is bound by the state court's determination of state law) (quoting *Mullaney v. Wilbur,* 421 U.S. 684, 690-91 (1975)), *cert. denied,* 510 U.S. 1073 (1994).

In any event, even assuming, as petitioner argues, that possession is a requisite element of drug trafficking under Ohio law, the undersigned disagrees with petitioner's contention that the evidence is insufficient to sustain his trafficking-in-cocaine conviction simply because the jury acquitted him on the cocaine possession count.  The fact that the jury did not reach a unanimous verdict of guilt on the

---

[4]In one such unpublished case from Ohio's Eighth Appellate District, the court explained that it was "possible to offer illegal drugs for sale without actually possessing the drugs or transferring them to the buyer," as "[f]or example, a defendant may act as a middleman soliciting buyers of illegal drugs for the individual who actually possesses the drug."  *State v. Hudson,* No. 79010, 2002 WL 472304, at *7 (Ohio Ct. App. 8th Dist. Mar. 28, 2002). (unpublished).

possession charge does not mean that the evidence presented with respect to that charge was such that no rational juror could have found petitioner guilty beyond a reasonable doubt of possessing cocaine as required under the applicable standard of review set forth in *Jackson.* *See Jackson,* 443 U.S. at 319.

The undersigned finds instructive the Supreme Court's decision in *United States v. Powell,* 469 U.S. 57 (1984), where the Court refused to vacate a defendant's conviction for using a telephone to facilitate conspiracy-to-possess cocaine and possession-of-cocaine offenses simply because he was acquitted on the underlying conspiracy and possession charges and the verdicts were, therefore, inconsistent and could not rationally be reconciled. The Court reasoned:

> . . . .[W]here truly inconsistent verdicts have been reached, "[t]he most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." . . . The rule that the defendant may not upset such a verdict embodies a prudent acknowledgment of a number of factors. First, . . . inconsistent verdicts–even verdicts that acquit on a predicate offense while convicting on the compound offense–should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.

*Powell,* 469 U.S. at 64-65 (quoting *Dunn v. United States,* 284 U.S. 390, 393 (1932)).

In so ruling, the Supreme Court expressly rejected the argument, similar to the one asserted by petitioner here, that "an acquittal on a predicate offense necessitates a finding of insufficient evidence on a compound felony count." *Id.* at 68. The Court stated that such an argument "simply misunderstands the nature of the inconsistent verdict problem" because it "assumes that the acquittal on the predicate offense was proper–the one the jury 'really meant[,]'" an assumption that is "not necessarily correct" given that the prosecution could "just as easily–and erroneously–argue that since the jury convicted on the compound offense the evidence on the predicate offense must have been sufficient." *Id.*

The Court noted that a criminal defendant is afforded adequate protection

14

against jury irrationality or error by independent review of the sufficiency of evidence, which involves an assessment under *Jackson* "whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt." *Id.* at 67 (and Supreme Court cases cited therein).  The Court emphasized that this sufficiency-of-evidence review "should be independent of the jury's [collective] determination that evidence on another count was insufficient." *Id.*

In this case, the undersigned concludes that sufficient evidence was presented to establish petitioner's guilt beyond a reasonable doubt on the drug trafficking charge even assuming, as petitioner has argued, that possession is considered an implicit element of that offense.

Ohio Rev. Code  § 2925.01(L) defines "possession" as follows:

"Possess" or "possession" means having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.

Possession may be actual or constructive.  *State v. Tell,* No. 84790, 2005 WL 628239, at *3 (Ohio Ct. App. 8th Dist. Mar. 17, 2005) (unpublished) (citing *State v. Wolery,* 348 N.E.2d 351, 360 (Ohio), *cert. denied,* 429 U.S. 932 (1976)). "Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *Wolery,* 348 N.E.2d at 360.  The State need not prove the defendant's ownership of the substance to establish constructive possession.  *Tell, supra,* 2005 WL 628239, at *3 (citing *State v. Mann,* 638 N.E.2d 585, 589 (Ohio Ct. App. 8th Dist. 1993), *appeal dismissed,* 637 N.E.2d 9 (Ohio 1994)).

Although mere presence in the vicinity of a controlled substance is insufficient to prove the element of possession, *State v. Claytor,* 620 N.E.2d 906, 911 (Ohio Ct. App. 4th Dist.) (and cases cited therein), *appeal dismissed,* 616 N.E.2d 506 (Ohio 1993), "[r]eadily usable drugs or other contraband in close proximity to a defendant may constitute sufficient and direct circumstantial evidence to support a finding of constructive possession." *Tell, supra,* 2005 WL 628239, at *3; *see also State v. Scalf,* 710 N.E.2d 1206, 1210 (Ohio Ct. App. 8th Dist.), *appeal dismissed,* 694 N.E.2d 981 (Ohio 1998); *State v. Pruitt,* 480 N.E.2d 499, 508 (Ohio Ct. App. 8th Dist. 1984).

15

In addition, constructive possession is established by evidence demonstrating the defendant aided or abetted another in drug trafficking.  *See, e.g., State v. Jones,* No. 9-02-39, 2003 WL 1617979, at *7 (Ohio Ct. App. 3rd Dist. Mar. 31, 2003) (unpublished) (and cases cited therein), *appeal dismissed,* 792 N.E.2d 200 (Ohio 2003); *State v. Peavy,* No. 80480, 2002 WL 31123877, at *3 (Ohio Ct. App. 8th Dist. Sept. 26, 2002) (unpublished) (in case where the State proceeded on the theory that the defendant acted as an accomplice in the drug sale by serving as a "lookout," the court held that the trial court did not abuse its discretion in refusing to instruct the jury that it had to find the defendant possessed the cocaine which formed the basis of the drug trafficking charge).[5]

As the Ohio Court of Appeals found on direct appeal, the following evidence was presented at trial by the State to establish petitioner's guilt on the possession and trafficking charges.  In the early morning hours of February 17, 2002, a police officer responding  to a report of shots fired in the 500 block area of East 13th Street observed petitioner, who matched the description of the suspect, exit a building's breezeway; the officer also observed petitioner stop when he saw uniformed police officers standing nearby and then run to and enter the front passenger door of a van that was parked on the north curb line of East 13th Street.  (Doc. 5, Ex. 16, Tr. 121-23). Immediately after petitioner entered the van, the van took off, proceeding westbound on 13th Street.  (*Id.,* Tr. 124-25).

Other officers called as back-up to pursue the fleeing vehicle, stopped the van "on Liberty Street just west of Sycamore" Street.  (*Id.,* Tr. 125).  There were three people in the van–the driver; petitioner, who was sitting in the front passenger seat; and another person, Durronomo Hunter, who was sitting in a back passenger seat approximately an "arm's length and a half" behind petitioner.  (*Id.,* Tr. 150-52; Ex. 17, Tr. 187).

---

[5]*See also State v. Landingham,* No. 84715, 2005 WL 375475, at *1-2 (Ohio Ct. App. Feb. 17, 2005) (unpublished) (affirming the defendant's drug trafficking conviction, because the evidence was sufficient to establish defendant aided and abetted the co-defendant's sale of drugs by serving as a  "lookout" for the co-defendant); *cf. Wolery,* 348 N.E.2d at 362 ("Possession . . . may be individual or joint. . . .  Proof of control or dominion is essential.  But control or dominion may be achieved through the instrumentality of another."); *State v. Dorsey,* No. 04AP-737, 2005 WL 1119613, at *7 (Ohio Ct. App. 10th Dist. May 12, 2005) (unpublished) ("Constructive possession . . . exists when a defendant knowingly has the power and intention at any given time to exercise dominion and control over [an object], either directly *or through others*.") (emphasis added).

No cocaine was recovered from the driver's area of the van or in the area around Mr. Hunter's captain-style seat. (*Id.,* Ex. 16, Tr. 162; Ex. 17, Tr. 188). However, the police officer, who detained petitioner, conducted a pat-down search of petitioner's person for weapons, and searched the "immediate area where [petitioner had been] sitting" in the van, recovered "two large bags of crack cocaine" from the front passenger captain-style seat. (*Id.,* Ex. 17, Tr. 184).  The bags of cocaine, weighing 35.30 grams, were found in a crevice of the seat "where the seat belt connects to the seat," or in other words, "shoved in between where [petitioner's] body would be and where the seat belt meets into the seat." (*Id.*, Tr. 184-85; *see also* Ex. 16, Tr. 128-31).

The police officer also found a bag of marijuana in one of petitioner's jacket pockets and an electronic scale, cell phone, three empty cellophane baggies and currency totaling $243 in the other pocket. (*Id.,* Ex. 17, Tr. 178-80, 189-90; *see also* Ex. 16, Tr. 126-28).  The officer, who had 22 years of experience with the police force and extensive training in the drug detection area, testified that drug dealers often use digital scales to weigh drugs, as well as cell phones to arrange meeting places for drug sales; he further testified that the three empty baggies found on petitioner are "commonly used" by drug dealers to "wrap the drugs up and tie them off." (*Id.,* Ex. 17, Tr. 174, 181-83; *see also* Ex. 16, Tr. 126-27).

Mr. Hunter testified at trial on behalf of the defense to the effect that he had a criminal record comprised of four felony convictions for possession of cocaine. (*Id.,* Ex. 17, Tr. 213-15).  In closing argument, defense counsel suggested that Mr. Hunter, who was the last person out of the van and who possibly exited the van through the right front passenger door (*see id.,* Tr. 197-98), could have deposited the bags of cocaine in the crevice of petitioner's seat before or while leaving the van. (*Id.,* Tr. 238-40).

However, viewing all the evidence in the light most favorable to the prosecution as required under *Jackson,* the undersigned concludes that a rational juror could have rejected the defense theory that Mr. Hunter deposited the cocaine in petitioner's seat immediately before leaving the van under police surveillance, and could have reasonably found instead that petitioner constructively possessed the crack cocaine recovered from the seat of the van that he had just occupied.  The evidence against petitioner consisted not only of the two bags of crack cocaine confiscated in an area of the van of closest proximity to him, but also of items confiscated off of petitioner's

person that are typically used or often found in drug trafficking activities.[6]

Accordingly, in sum, petitioner is not entitled to habeas corpus relief because (1) his manifest-weight-of-the-evidence claim alleged in Ground One of the petition raises an issue of state-law only that is not cognizable in this federal habeas proceeding; and (2) he has not demonstrated as alleged in Ground Two of the petition that the evidence is insufficient to support his drug trafficking conviction under Ohio Rev. Code §2925.03(A)(2).

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc.1) be DENIED with prejudice.

2. A certificate of appealability should issue with respect to the constitutional claim alleged in Ground Two challenging the sufficiency of evidence, which this Court has concluded is barred from review on waiver grounds, because under the two-part standard enunciated in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000), "jurists of reason" would find it debatable whether this Court is correct in its procedural ruling and whether petitioner has stated a viable constitutional claim for relief. However, a certificate of appealability should not issue with respect to the state-law claim alleged in Ground One of the petition, which this Court has concluded is also procedurally barred from review, because under the second prong of the *Slack* standard, "jurists of reason" would not find it debatable whether petitioner has stated a viable constitutional claim in that ground for relief. *See id*.

3.  With respect to any application by petitioner to proceed on appeal *in forma*

---

[6]It is noted that even if conclusively shown that Mr. Hunter participated in hiding the cocaine found in petitioner's seat, a rational juror could have reasonably inferred from all the evidence that petitioner jointly possessed the crack cocaine for distribution in violation of Ohio Rev. Code § 2925.03(A)(2), or was guilty as an accomplice in trafficking cocaine. *Cf. State v. Trammer*, No. 85456, 2005 WL 1793511, at *4 (Ohio Ct. App. 8th Dist. July 28, 2005) (unpublished) (where cocaine was found between the center console and the passenger seat, the court found that both the defendant driver of the car and the passenger jointly possessed the cocaine within easy reach of both of them); *Peavy, supra,* 2002 WL 31123877, at *3.

*pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and therefore GRANT petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6ᵗʰ Cir. 1997).

Date:  <u>10/5/06</u>                                    s/<u>Timothy S. Black</u>
                cbc                              Timothy S. Black
                                        United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Montez O. Walker,
     Petitioner,

                                            Case No. 1:05cv103
          v.                                  (Spiegel, S.J.; Black, M.J.)

Deb Timmerman-Cooper,
     Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action brought under 28 U.S.C. § 2254.  Any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.  Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s)   Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).